UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

THOMAS HEDGESPETH                    CIVIL ACTION NO. 11-cv-2078

VERSUS                               JUDGE HICKS

WARDEN, LOUISIANA STATE              MAGISTRATE JUDGE HORNSBY
PENITENTIARY

# REPORT AND RECOMMENDATION

**Introduction**

    A Caddo Parish jury convicted Thomas Hedgespeth ("Petitioner") of both aggravated rape and aggravated burglary in connection with an attack on a 79-year-old woman. His convictions and sentences were affirmed on direct appeal. State v. Hedgespeth, 974 So.2d 150 (La. App. 2d Cir. 2008), writ denied, 992 So.2d 1008 (La.). He also pursued post-conviction applications and a motion to correct his sentence. He now seeks federal habeas corpus relief on a number of claims. For the reasons that follow, it is recommended the petition be denied.

**Facts**

    Petitioner was 17 years old in October 2003 when he and his friend, Christopher Jackson, broke into a house with the intent to steal the homeowner's car. The home was owned by 79-year-old M.J. The victim testified that she was alone in her home when she heard a noise and looked down a hallway to see two black men wearing hooded sweatshirts standing near her front door.

M.J. attempted to run to the bedroom to call for help, but one of the men went into the room, hit and choked her, threatened to kill her, and forced her to turn over her car keys. Petitioner then forced M.J. to perform oral sex on him. She could not do so because her jaw had slipped out of place from screaming, so he hit her again and pushed her onto the bed, where he had vaginal intercourse with her against her will. M.J. could not identify the man, but Petitioner was taller than Jackson. M.J. testified that the rapist took her keys and her billfold, which contained credit cards and some cash.

Petitioner and Jackson left in M.J.'s car, and M.J. called the police. An officer spotted the car and approached. Petitioner and Jackson fled, but they were eventually caught. Petitioner admitted to police that he broke into M.J.'s house and that he raped M.J. He said, "All right dog. I poked her. What else do you want to know?" Co-defendant Jackson testified for the State. He implicated himself and Petitioner in the burglary, admitted that Petitioner and the victim were engaged in a struggle that involved screaming, but denied knowledge of any rape.

Petitioner and Jackson consented to have their cheeks swabbed for DNA testing. A vaginal swab, anal swab, and neck swab were taken from the victim. An expert from the Crime Lab testified that Christopher Jackson could be excluded as contributing to any of the swab samples. Petitioner's DNA was consistent with the swabs, and the probability that another person left the DNA taken in the vaginal and anal swabs was one in 46.8 trillion. Petitioner's DNA was also consistent with that taken from the victim's neck area.

Petitioner took the stand at trial. He testified that Jackson had been taking Ecstasy and drinking gin and juice when Jackson suggested they visit M.J.'s son, from whom Jackson had purchased marijuana. Petitioner said that Jackson kicked open the door to the house, and Petitioner ran into the yard. Jackson went inside and later emerged with a pocketbook and car keys. Jackson tossed the keys to Petitioner, and the two drove away in the victim's car with Petitioner at the wheel.

Petitioner said he later turned himself in to police and gave two statements. In the second statement, he admitted that he had sex with or "poked" the victim, but he claimed at trial that the statement had been a lie, which he told because a detective said he would be released to his parents if he admitted to the two crimes. He said that he never went inside the home. Petitioner said he understood his sperm was found inside the victim, but he had no idea how it got there.

Before trial, the State offered to allow Petitioner to plead guilty to forcible rape and receive a 40 year sentence. He countered with 20 years. The State offered 30 years, but Petitioner turned it down and went to trial. Tr. 505. The jury heard the evidence described above and convicted Petitioner of aggravated rape and aggravated burglary.

Judge Jeannette Garret said at sentencing that she would "always remember this trial" that she described as "one of the worst cases that this judge has heard." She recognized that Petitioner was only 17 when he committed the crimes but said that "doesn't excuse any of this" and that Petitioner was "a very dangerous person who needs to be removed from the public." The aggravated rape statute mandates a life sentence without benefit of parole,

probation, or suspension of sentence. La. R.S. 14:42. Judge Garrett imposed the mandatory life sentence on that charge and added 30 years, to run consecutively, on the aggravated burglary charge. Tr. 503-10.

**Ineffective Assistance of Counsel**

   **A. Introduction**

Petitioner was represented at trial by attorney Mary Harried. Petitioner argues that counsel rendered ineffective assistance because (1) counsel did not object to Christopher Jackson's testimony that he had been convicted of the crimes Petitioner was on trial for, (2) counsel did not request a limiting instruction regarding the use of Jackson's conviction, and (3) counsel did not file a motion to quash based on double jeopardy. The state courts denied these claims on the merits.

   **B. Petitioner's Heavy Burden**

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The statute "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions" listed above. Harrington v. Richter, 131 S.Ct. 770, 784 (2011). The question under Section 2254(d) is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786. Section 2254(d) reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Even if the state court has offered only a summary denial on the merits, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id.

**C. Jackson's Testimony**

Petitioner argues that his attorney should have objected when the prosecutor questioned Christopher Jackson "extensively as to his pleading guilty on direct examination," thus denying the defense the full force of being able to impeach Jackson with his guilty plea. Petitioner also objects to Jackson's guilty plea being used as substantive evidence of Petitioner's guilt.

Petitioner presented this claim in his post-conviction application. The trial court acknowledged the claim, recited the <u>Strickland</u> standard, and held that Petitioner had "failed to produce any evidence to support these allegations." The court noted that state evidence rules allowed for the questioning of a witness regarding his criminal convictions, and there was no evidence the prosecutor improperly questioned the witness or that the jury did not assess Jackson's admission of guilt simply as evidence of Jackson's credibility. The complaint that counsel should have requested a limiting instruction related to this testimony was also rejected. Tr. 698-99. The state appellate court issued a one-paragraph writ denial that stated, with respect to all of the ineffective assistance claims, Petitioner had "failed to demonstrate that his trial counsel's performance was deficient, nor did he demonstrate how the alleged deficiencies prejudiced the outcome of his case." Tr. 737. The Supreme Court of Louisiana denied writs without comment. Tr. 770.

A review of Jackson's testimony shows that he did not testify about a guilty plea or conviction on these charges. Rather, he admitted that the prosecutor approached him and his attorney about the possibility of testifying against Petitioner. Jackson testified that no promises were made to him, and he entered into a proffer agreement that was admitted into

evidence. Jackson agreed with the prosecutor that it "specifically says you're not getting anything for this testimony today." Jackson proceeded to testify and describe his role and the role of Petitioner in the crimes. There was no testimony that Jackson had plead guilty or been convicted; he was still awaiting trial. Tr. 431-34. The State represents that Jackson did eventually plead guilty about a month after he testified. Defense counsel discussed the proffer agreement in her closing argument and suggested that, although it did not reflect a deal, Jackson had every reason in the world to curry favor with the same prosecutor who was holding him in jail on an aggravated burglary charge. Tr. 475.

    The general rule in federal courts is that "evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant." U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir. 2008), quoting U.S. v. Leach, 918 F.2d 464, 467 (5th Cir. 1990). But prosecutors have been allowed to blunt the sword of anticipated impeachment by eliciting on direct examination of a government witness that the witness was convicted in the case. Leach, 918 F.2d at 467. It appears many state courts also generally find inadmissible evidence of a co-defendant's conviction or acquittal. State v. Weaver, 873 So.2d 909, 915 (La. App. 2nd Cir. 2004) (collecting cases).

    Those rules are inapplicable here because the State did not try to use of a conviction of Jackson as evidence of Petitioner's guilt. Jackson had not yet been convicted of anything. The prosecutor discussed the proffer agreement, and defense counsel's lack of objection to that discussion was certainly not deficient. Defense counsel would have been remiss had she not explored the issue if the prosecutor had not mentioned it.

Petitioner appears to complain that the defense was denied the ability to make a more effective impeachment with the use of the proffer agreement because the prosecution stole its thunder by admitting the potentially harmful facts during direct examination. Attorneys on both sides of a case often reveal weaknesses in a witness's background during direct examination, and the other side is not entitled to object that it was denied the ability to conduct a "gotcha" cross-examination on the topic. Any objection by counsel along those lines would have been overruled. Greer v. Warden, 2014 WL 4387295 (W.D. La. 2014) (rejecting similar habeas claim). There was also no basis for counsel to request a limiting instruction regarding the use the jury could make of Jackson's conviction; Jackson did not have a conviction.

Petitioner has not demonstrated that counsel rendered deficient performance with respect to these issues. Assuming error, there was no prejudice. There is no significant likelihood that had counsel made a likely meritless objection or requested an inapplicable limiting instruction that the verdict would have been different. As the trial judge said, "Johnny Cochran, Clarence Darrow, nobody could have gotten you off of this because the DNA was 46.8 trillion to one," Petitioner was seen in the victim's car, and he was clearly the taller of the two men involved in the crimes. Tr. 509. More important, Petitioner has not demonstrated that the state court's adjudication of these claims was an objectively unreasonable application of Strickland. Habeas relief is not permitted.

**D. Double Jeopardy**

Petitioner argues that counsel was ineffective because she did not file a motion to quash. He contends that a conviction for both aggravated burglary and aggravated rape run afoul of the double jeopardy clause if the aggravated burglary is an underlying felony of the aggravated rape. Petitioner presented this argument in a post-conviction application. The trial court held that he was "substantively incorrect" on the issue. The court cited State v. Robertson, 511 So.2d 1237 (La. App. 2d Cir. 1987), which affirmed convictions of those crimes and noted that they do not contain identical elements. Aggravated burglary requires an element of unauthorized entry; aggravated rape does not but requires sexual intercourse which aggravated burglary does not. The trial court went on to discuss the "same evidence" test that Louisiana courts apply (in addition to the traditional Blockburger test) and found it also inapplicable. Petitioner had fulfilled the elements of aggravated burglary[1] when he (1) entered the victim's home without authorization, (2) had an intent to commit a felony theft of the victim's car and keys, and (3) he committed a battery on the victim when he hit and choked her. He separately fulfilled the elements of aggravated rape[2] when he committed rape

---

[1] La. R.S. 14:60 provides:

A. Aggravated burglary is the unauthorized entering of any inhabited dwelling...where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances:
(1) If the offender is armed with a dangerous weapon.
(2) If, after entering, the offender arms himself with a dangerous weapon.
(3) If the offender commits a battery upon any person while in such place, or in entering or leaving such place.

[2] La. R.S. 14:42 provides:

upon a person over 65 years of age. The offenses were deemed independent and able to be proved without relying on identical evidence. The court found that counsel was, therefore, not deficient in not filing a motion to quash. Tr. 699-700. The state appellate court summarily denied all Strickland claims with the language quoted above. Tr. 737.

Louisiana courts have affirmed convictions for both aggravated rape and aggravated burglary in similar cases. See, e.g., State v. Anderson, 499 So.2d 1252 (La. App. 4th Cir. 1986) (burglar battered a victim over 65, which preceded the rape) and State v. Davis, 36 So.3d 351 (La. App. 3d Cir. 2010) (burglar slapped the victim separately from the rape). It appears that a motion to quash on the grounds suggested by Petitioner would not have been successful under the Blockburger standard or the more generous same evidence test that is also applied in the cited Louisiana decisions. "[C]ounsel is not required to make futile motions or objections." Miller v. Thaler, 714 F.3d 897, 904 n.6 (5th Cir. 2013), quoting

---

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.

Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990). Given the lack of arguable merit in a motion to quash, the state court's adjudication of this claim was not an objectively unreasonable application of Strickland.

**No Transcript of Peremptory Challenges and Bench Conferences**

Petitioner argued in his post-conviction application that the record did not adequately reflect the defense's peremptory challenges, and he complained that some bench conferences were not transcribed even though they included discussions regarding jury selection. The trial court stated that the "record does contain an accurate jury ledger completed by the Clerk of Court reflecting all the challenges made by the State and the defense." As for unrecorded bench conferences, the court noted that it had been common practice for litigators to conduct bench conferences off the record, and Petitioner had offered nothing but conclusory allegations that he was prejudiced as a result. Tr. 699-700. The state appellate court also noted that Petitioner "failed to show any prejudice for the alleged incomplete record." Tr. 737.

The Supreme Court of Louisiana held, the year after this trial was held, that as a matter of state criminal procedural law, bench conferences are a material part of the proceedings. If there are potential grounds to appeal based on how challenges were ruled upon and used, the absence of a transcript or other contemporaneous records to account for the selection process requires reversal. State v. Pinion, 968 So.2d 131 (La. 2007). Petitioner bases his arguments in this court primarily upon Pinion and related Louisiana Criminal Code articles.

This court may not provide habeas relief based on the later holding in Pinion. Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

The State argues that Petitioner presented only state law arguments to the state courts and, thus, did not exhaust a federal law claim that he could present to his court. The post-conviction filings with regard to this issue were almost wholly devoted to state law discussion, but there were some brief references to the right to due process under the Fourteenth Amendment. Even if it is assumed a federal due process claim was exhausted, the claim lacks merit.

The Supreme Court has not required the State to provide a full transcript based on mere request. Draper v. State of Washington, 83 S.Ct. 774 (1963). Only those parts that are germaine to consideration of an appeal must be provided. This means a defendant must allege a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record. The State is not required to provide complete transcripts so that a defendant may conduct a fishing expedition to seek out possible errors for appeal. Johnson v. Cooper, 2013 WL 4548526, *7 (E.D. La. 2013), citing Kunkle v. Dretke, 352 F.3d 980, 985-86 (5th Cir. 2003).

Petitioner has not articulated any particular appellate issue that could have been fleshed out by obtaining a transcript of a bench conference, so habeas relief is not available

on this speculative claim. Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences] resulted in 'actual prejudice,' habeas relief is unwarranted."(citation omitted));  Greer, 2014 WL 4387295, **10-11 (rejecting similar habeas claim); and Bozeman v. Cain, 2010 WL 2977393, *4 (E.D. La. 2010) (same).

**Sentencing Issues**

Petitioner, who was 17 at the time of the crimes, received the mandatory sentence for aggravated rape of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The Supreme Court later held that the Eighth Amendment forbids the imposition of life in prison without parole for persons who were under 18 when they committed crimes other than homicide. Graham v. Florida, 130 S.Ct. 2011 (2010). The Court held that a state is not required to guarantee eventual freedom to a juvenile offender convicted of a non-homicide crime. What the State must do is give such defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 2030. The Eighth Amendment does not foreclose the possibility that such defendants will remain behind bars for life. It simply forbids states from making the judgment at the outset that they will never be fit to reenter society. Id.

After Graham issued, Petitioner filed a motion to correct his sentence. He argued that the trial court must impose a new sentence under the penalty provisions for the next lesser and included offense, which he suggested was forcible rape with a sentencing range of five to 40 years. This argument was based upon decisions by the Supreme Court of Louisiana in other settings where illegal sentences were remedied.

Before Petitioner was resentenced, the Supreme Court of Louisiana issued <u>State v. Shaffer</u>, 77 So.2d 939 (La. 2011), which addressed a proper remedy for juvenile offenders who challenged their aggravated rape life sentences under <u>Graham</u>. The Court rejected the "next lesser offense" remedy it had used in other settings and ordered that the sentences be modified to delete the "without parole" provision. Louisiana parole statutes provided that parole was not available on a life sentence unless it was first commuted to a fixed term. The Court held that the Eighth Amendment prohibited the State from enforcing those provisions and that the juvenile offenders would be eligible for parole consideration under another statute that allowed parole eligibility upon serving at least 20 years of imprisonment and upon reaching the age of 45. The Court noted that this was likely an interim measure pending a legislative response.

Several days after <u>Shaffer</u> issued, Judge Michael Pitman resentenced Petitioner to life imprisonment, removed the prohibition against parole, and ordered the Parole Board to determine eligibility for any parole. Within months, the legislature responded to <u>Graham</u> and <u>Shaffer</u> by amending La.R.S. 15:574.4(B), which had required a life sentence be commuted to a fixed term before parole was possible. The amended statute now states that there is an exception to that rule, provided in Subsection D. The exception states that a person sentenced to life who was under 18 at the time of the crime, except for first or second-degree murder, shall be eligible for parole if all of several conditions are met. The first condition is that the offender has served 30 years of the sentence. The other conditions include a lack of recent disciplinary offenses, completion of certain programs, and accomplishment of

various goals while in prison. The statute provides that a three-member panel shall consider a written evaluation of the offender by a person with expertise in adolescent brain development and behavior, along with any other relevant evidence.

Petitioner appealed his new sentence and continued to argue, despite the recent developments, that his new sentence conflicted with the Louisiana statute that required a life sentence be commuted to a fixed term before parole could be considered. He argued that this required resentencing pursuant to the penalty for the next lesser offense, but that remedy had been rejected by the Supreme Court of Louisiana, and the legislature had enacted a revision to the statute that created a special exception for persons such as Petitioner. The appellate court, accordingly, affirmed the sentence (with a non-applicable modification) in a reasoned opinion. State v. Hedgespeth, 107 So.3d 743 (La. App. 2d Cir. 2012), writ denied, 113 So.3d 210 (La. 2013).

This court allowed Petitioner to amend his petition after he exhausted his sentencing issues in the state courts. He continues to argue that Section 574.4(B) stands in the way of the sentence he received. The statute has been amended to specifically address this situation and to remove the obstacle cited by Petitioner. He also argues that the remedy directed by Shaffer would not allow parole until the juvenile reached age 45 and had served 20 years of his sentence, and that is unconstitutional because it would require a 17 year-old offender serve at least 28 years before eligibility. The legislature has since provided a different rule for parole eligibility. Louisiana has resentenced Petitioner so he is allowed an opportunity

to earn parole after serving 30 years of his sentence for an extremely heinous crime. The state courts rejected his sentencing challenges on the merits.

Petitioner is not entitled to habeas relief on this claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has made clear that life without parole for juvenile offenders is unconstitutional, and the states must give the offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 130 S.Ct. at 2030. The Court allowed that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance." Id. Louisiana has begun its exploration of how to comply with Graham, and the Supreme Court has not clearly established in Graham or any other decision that the current Louisiana approach is unconstitutional. Thus, habeas relief is not permitted on this final claim no matter how persuasive an argument Petitioner might muster that the 30 years rule is too onerous. Absent a clear holding from the Supreme Court on that issue, the claim must be dismissed. Walder v Cain, 2015 WL 349285, **10-11 (E.D. La. 2015) (dismissing similar habeas claim).

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of February, 2015.

                                                          Mark L. Hornsby
                                                          U.S. Magistrate Judge